DENMAN, MINOR, Etc. *v.* DENMAN, ADMR., Etc.

No. 42003 November 6, 1961 134 So. 2d 457

*Breland & Whitten,* Sumner and Charleston; *Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellant.

*Holcomb & Curtis,* Clarksdale, for appellee.

62

McELROY, J.

This is an appeal from a verdict of the Circuit Court, Second Judicial District, Tallahatchie County, Mississippi. In the trial, after the plaintiff rested, on motion made by defendant, the case was not permitted to go to the jury, the circuit judge directing a verdict for defendant.

The suit was filed by Joyce H. Denman, Mother and Next Friend of Minor Betty Denman, against Mack L. Denman, Administrator of the Estate of Mrs. Eva B. Denman, Deceased, for injuries received by the child, who was approximately six and one-half years of age, while a passenger in a car driven by her grandmother on Sunday, March 23, 1958. The collision occurred about 6:15 P. M. on Highway 49E between the Town of Sumner and the Town of Webb in Tallahatchie County, about dusk. Mrs. Eva B. Denman was driving a 1954 Ford automobile in a southerly direction at a time when there was a drizzling rain and it was foggy. At which time, Joseph A. Ross was driving his Plymouth automobile in a northerly direction. Mrs. Denman, Mr. Ross and a passenger in his car were killed. There were no eyewitnesses.

The appellant's declaration was based on two counts, (1), that Mrs. Denman was driving at an unlawful rate of speed, considering the condition of the weather, and that she negligently permitted her car to be driven to the left of the center line of the highway, at the same time the said Ross was driving his car at an unlawful and dangerous rate of speed, causing a "head-on" collision; and (2) realleging the facts constituting negli-

gence, but particularly relying on the principle of *res ipsa loquitur* to establish a cause of action against the estate of Mrs. Denman.

No testimony was offered to prove that Mrs. Denman was driving at an excessive rate of speed or did not have control of her car at the time of the accident. Four witnesses testified on behalf of the plaintiff who had knowledge of the accident after its occurrence. Their testimony is outlined as follows:

R. R. Sewell, Highway Patrolman, investigated the accident. He said the accident happened about 6 P. M. on a rainy evening, and when he arrived he noticed two automobiles on the east side of the highway and a body was lying on the west. Debris, chrome strips, etc. were scattered on the left side. From his observation, the impact on the Denman car was to the right front fender toward the windshield. The hood was almost intact, and was not bent very much. The impact drove the right front wheel back to the windshield, toward the rear of the car. The main force of the impact on the Ross car was to the left of the center front. The driver was pinned under the steering wheel, his feet being pinned under the pedal.

Mr. Sewell said it was impossible to see skidmarks due to the heavy rain. He made six trips to the scene trying to determine the cause of the accident, and to note position of skidmarks or marks of any kind. A few days later when the weather was dry, he found faint skidmarks which started at the edge of the pavement on the west side which were nine yards long on the left side and three yards on the right. When asked if the skidmarks crossed over to the east lane of the northbound traffic at this point, he said "They didn't show up to cross over. No, sir." The Denman car was facing in a southeasterly direction. The Ross car was farther north. They were about 20 yards apart. The engine and transmission of the Denman car were on the west side of the

highway, about 13 yards from the pavement, directly across from the Ross car, the engine being about 8 feet north of the transmission. The skidmarks were in a 45-degree angle toward the center line. The debris was north of the skidmarks. There was a trail of oil from the motor and transmission off the highway on the west side.

John Wesley Barnett testified that he was driving north the afternoon of the accident in a Dodge pickup and discovered that there had been an accident on the right side of the highway. He had not seen the accident. Other people were there. He had been there about six or eight minutes when he heard a little girl crying. She was in a ditch on her back on the right-hand or east side of the highway. Before he reached the scene of the accident, a car passed him traveling north at approximately seventy miles an hour. This car passed him and got back in his lane of travel. As far as he could see, it remained on the west side of the highway. This was a Plymouth car. He didn't pay much attention to the cars, but he could see red lights and headlights.

John Pressgrove testified that the weather was bad the night of the accident, that it was drizzling rain. It was dark enough to have your parking lights on but not necessary to have your headlights on. He learned that there had been a serious accident, and when he got there Mrs. Denman's body was lying in the middle of the road. Her feet were facing west and her head east, crosswise the middle of the road. Her head was approximately two feet from the center line. On the west side of the highway from Mrs. Denman's body, there was a chuckhole. It appeared to have been made by a truck or a vehicle which had pulled off the shoulder. He saw a fresh track leading toward the center line, with the mud and water still running. The pavement leaned to the west, and the mud and water were still running back in a hole on the west side.

Hal Buckley testified that he was on the highway March 23, 1958, between Webb and Sumner, going toward Tutwiler, and that it was misting rain. A car passed him going in the same direction. He saw it a few minutes later but couldn't tell much about it as it was traveling fast, he judged about 45 or 50 miles an hour. It was the Plymouth involved in the accident. The accident happened before the taillights went out. He said that when the car passed him, it passed back on the right side and that he could still see the taillights. He was on the same side. When he arrived at the scene, he saw the little girl north of the cars to the right of the road, that is, on the east side. She was lying flat on her back. He could not testify definitely as to what happened. He saw the cars about the time they collided but he could not be definite about anything except the side on which the cars left the road.

The appellee introduced no witnesses. Therefore the facts are undisputed. The proof, from the above-stated testimony, showed that the engine and transmission of the Denman car where found on the west side of the highway some 39 feet from the pavement, directly across from the Ross car. The engine was about 8 feet north of the transmission. The remainder of the Denman car was on the east side of the highway, facing south. The Ross car was on the east side of the highway, facing west. They were about 20 yards apart. The little girl, Betty Denman, was found north of the Ross car. The testimony was indefinite as to any particular car which might have made the faint skidmarks found by the patrolman a few days later. Hal Buckley stated that the Ross car passed him and got back on the right side, further stating that he "could not tell much about nothing." He saw the cars about the time "they hit" but he could not be definite about anything concerning the accident except that he knew on which side the cars left the road. In other words, the evidence in this case is circumstantial.

██ ■ Negligence may be established by circumstantial evidence in the absence of testimony by eye-witnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it in the field of legitimate inference, and in such case the causal connection between the agency and the injury need not be shown by direct evidence. See Johnston v. Canton Flying Services, Inc., 209 Miss. 226, 46 So. 2d 533; Tombigbee Electric Power Ass'n v. Gandy, 216 Miss. 444, 62 So. 2d 567; Brown-Miller Company v. Howell, et al., 224 Miss. 136, 79 So. 2d 818; Magnolia Petroleum Company v. Stinson, 230 Miss. 533, 93 So. 2d 815; Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438; Matthews v. Carpenter, 231 Miss. 677, 97 So. 2d 522; Turnipseed v. McGee, Executor, 236 Miss. 159, 109 So. 2d 551; 32 C. J. S., Evidence, Sec. 1039, p. 1099; 39 Am. Jur., Negligence, Sec. 333, p. 1032; Palmer v. Clarksdale Hospital, 206 Miss. 680, 49 So. 2d 582; Southern Pine Electric PowerAss'n v. Denson, 214 Miss. 397, 57 So. 2d 859, 59 So. 2d 75; Farish v. Canton Flying Services, Inc., 214 Miss. 370, 58 So. 2d 915; Clois D. Thompson v. Hal L. Jenkins, Admr. Estate of Loyd Jenkins, Deceased, 330 S. W. 2d 802.

██ ■ In determining the question as to whether the appellee was entitled to a directed verdict, the evidence must prove every fact favorable to appellant's case, either directly or by reasonable inference. See Johnston v. Canton Flying Services, Inc., supra; Dean v. Brannon, 139 Miss. 312, 104 So. 173; Bankston v. Dumont, 205 Miss. 272, 38 So. 2d 721; Kurn v. Fondren, et ux, 189 Miss. 739, 198 So. 727; Stricklin v. Harvey, 181 Miss. 606, 179 So. 345.

Section 6555, Vol. 10, Blashfield's Cyclopedia of Automobile Law and Practice, p. 391, states: ''It cannot be said, however, as a matter of law, where there is a collision of automobiles, that the accident did not happen as stated by either party solely from the respective posi-

tions of the automobiles after the accident; there being such a complexity of forces and resultants as to afford no idea where the two automobiles would go or what they would do."

"* * * if an accident appears upon the evidence to be as consistent with the absence of negligence for which the defendant is responsible as with the existence of such negligence, the plaintiff must fail, and the case should not be left to the jury." 38 Am. Jur., Negligence, Sec. 345, p. 1045.

 Under the testimony and the facts of this case, could a reasonable jury do any more than speculate as to whether the Denman vehicle ever crossed the center line of Highway 49? We know verdicts must rest upon reasonable probabilities. The Court is faced with the question of whether it is probable that the Denman car passed over the center line of the highway.

 It was held in the case of I. C. R. R. Company v. Cathey, Adm'r., 70 Miss. 332, 12 So. 253, that "Possibilities will not sustain a verdict. It must have a better foundation. * * * But we have considered the case as if all was proved which the plaintiff's evidence, accepted as true, tends to prove, and, thus viewed, there is a wide chasm between the matters referred to as the cause of the hurt and the injury received. This chasm has no bridge but conjecture, which is insufficient to maintain a jury in crossing to a verdict in any case."

This Court held in the case of Tombigbee Electric Power Association v. Gandy, supra, that "We are fully mindful of the rule that negligence may be established by circumstantial evidence and that the causal connection between an agency and the injury need not be shown by direct evidence, but this rule is qualified to the extent that the circumstances shown must be such as to take the case out of the realm of conjecture and place it within the field of legitimate inference. * * * Reluctant as we are to disturb the verdict of the jury we cannot

close our eyes to the well-established principle that verdicts must rest upon reasonable probabilities and not upon mere possibilities. Since no reasonable probability appears in this case it is our conclusion that the peremptory instruction requested by appellant should have been granted * * *''

In the case of Y. & M. V. R. R. Company v. Skaggs, 181 Miss. 150, 179 So. 274, it was said: ''As this Court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability.''

Also, in Blashfield Cyclopedia of Automobile Law and Practice, Vol. 10, Sec. 6555, p. 391, it is stated: ''On the other hand, a plaintiff must show by substantial evidence that defendant or his driver was negligent. A fact cannot be regarded as proven if the evidence merely gives rise to conjecture or suspicion of its existence, and where there is nothing in the record upon which to base a verdict except conjecture, it is not sufficient. The courts will not sustain a verdict where there is only a slender piece of evidence which can only tend to prove one fact and death draws the curtain so that the jury and the court are left to surmise and conjecture.''

In the case of Dukes, et al. v. Sanders, 239 Miss. 543, 124 So. 2d 122, recently decided by this Court, wherein a headon collision occurred involving a Chevrolet automobile traveling west on Highway 80, in which the plaintiff Sanders was riding as a guest, and a Ford automobile driven by Kelly Hammond Dukes, traveling east on said highway, the plaintiff, Mrs. Lena Sanders sued Dukes and the Administrator of the Estate of Mrs. Jean Warren Simmons who was the driver of the car in which the plaintiff was riding. The question arose as to which automobile was across the center line of the highway. The lower court granted a peremptory instruction in

favor of the Simmons Estate. The Court in this case held: "But we think the appellant Kelly Hammond Dukes cannot complain of the action of the trial court in granting the peremptory instruction in favor of the administrator of the estate of Mrs. Simmons. The facts in this case are entirely different from the facts shown by the record in the Carlson case. In that case, as stated by the Court in its opinion, the directed verdict 'was in favor of one whose negligence proximately contributed to the injury as was overwhelmingly shown by the evidence.' In this case there was no such overwhelming showing of contributory negligence on the part of Mrs. Simmons. As we have seen above, Kelly Hammond Dukes was asked to state just how the collision occurred; and his answer was: 'The first thing I knew it was done.' He was then asked, 'What side of the road were you on at that time?' And his answer was, 'Before the collision I was on the right-hand side, when they hit I don't know what happened.' There is no evidence in the record to show that Mrs. Simmons was driving at an unlawful or excessive rate of speed. No witness testified that she crossed over the center line of the highway at the time of the collision. In view of the facts thus stated we think there was no error in the court's action in granting the peremptory instruction in favor of Mrs. Simmons' administrator; and if there was error it was not such error as the appellant can complain of."

We are of the opinion that there is no evidence that Mrs. Denman was exceeding the speed limit or that she was on the wrong side of the highway.

 In the second count of the declaration, plaintiff attempted to avail herself of the doctrine of res ipsa loquitur. We do not believe such doctrine is applicable to this case. Mrs. Eva B. Denman had no control over the Ross vehicle. The rule seems to be that res ipsa loquitur "will not be applied where the evidence discloses that the injury might have occurred by reason of

the concurrent negligence of two or more persons or causes, one of which was not under the management and control of the defendant * * *'' Vol. 9B, Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 6046, p. 454.

In the case of Peerless Supply Company, Inc. v. Jeter, 218 Miss. 61, 65 So. 2d 240, our Court held that for the doctrine of res ipsa loquitur to be applied, the cause of ''the injury must be in the exclusive control and management of the defendant * * *'' The rule could not apply in this case since the Ross car was exceeding the speed limit. In no instance could Mrs. Denman be responsible under this situation and be the sole, proximate cause of the collision.

There might be some reason to apply the doctrine of res ipsa loquitur in the instant case if the plaintiff had proved that the alleged facts caused the accident to occur on the east side of the highway, but this important and necessary proof is missing, and therefore the basis for the application of the doctrine of res ipsa loquitur lacks an important and necessary element of truth. ''From the foregoing authorities it is apparent that whenever it is made to appear from the development of essential facts that accidents do not ordinarily occur without the fault of one or the other of the drivers of the colliding vehicles, the presumption is indulged that fault existed, and, if not rebutted by the party whose fault is presumed, will be considered conclusive of his negligence. This would be true in the instant case if there were proof of the alleged fact contended for by plaintiff, that the accident occurred on the lake side of the highway, but this important and necessary prop is missing * * * Nuss v. MacKenzie, 4 So. 2d 845 (La. 1942).

Affirmed.

*Lee, P. J., Arrington, Rodgers* and *Jones, JJ.,* concur.